**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| DEERE & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| SETH CRAWFORD, | ) | |
| ADRIAN CRAWFORD, | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

## <u>COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff Deere & Company ("Deere"), through its attorneys, Michael Best & Friedrich LLP, alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is an action for trade secrets misappropriation, breach of contract, and breach of duty of loyalty, and for damages and injunctive relief.  The lawsuit arises out of the departure of two critical employees of Deere, who while planning their exit from the company, downloaded, transferred and removed Deere's confidential and trade secret information in violation of their contractual and other legal duties to the company.  One of the Defendants already started his employment with Deere's direct competitor, and Deere brings this lawsuit to stop the Defendants' possession, disclosure and use of Deere's confidential and trade secret information.  Deere's attempts for informal resolution of the matter were stalled and frustrated by the Defendants and Deere's competitor employing one of them, prompting Deere to bring this lawsuit and seek assistance from the Court to stop and remedy the illegal conduct.

## PARTIES

2.    Plaintiff Deere is a Delaware corporation, with its principal place of business located at One John Deere Place, Moline, Illinois 61265.

3.    Defendant Seth Crawford is a former employee of Deere.  Upon information and belief, Mr. Crawford currently resides at 3941 The Battery, Duluth, Georgia 30096.

4.    Defendant Adrian Crawford is a former employee of Deere.  Upon information and belief, Ms. Crawford currently resides at 3941 The Battery, Duluth, Georgia 30096.

5.    Seth Crawford and Adrian Crawford (together referred to as "the Defendants" or "the Crawfords") are husband and wife.

## JURISDICTION AND VENUE

6.    This is a suit for a trade secret misappropriation under the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836 et seq. and the Illinois Uniform Trade Secrets Act, 765 ILCS 1065/1 et seq.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

7.    The Court has supplemental jurisdiction over Deere's state law claims under 28 U.S.C. § 1367(a) because these claims are directly related to the claims in this action within this Court's original jurisdiction and intertwined with the same case or controversy.  Deere's common law claims are substantially related to Deere's claims over which this Court has the original jurisdiction.

8.    This Court has personal jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209.  Both Defendants worked in Illinois for an Illinois employer, and breached fiduciary duties and their Employee Innovation & Proprietary Information Agreements (the "Agreements") in Illinois.  They both signed the Agreements at issue herein when they were employed by and with

Deere, headquartered in Moline, Illinois.  Both Defendants worked for Deere at its world headquarters, located in Moline, Illinois.  A substantial amount of Plaintiff's trade secrets and confidential information at issue herein were developed in Moline, Illinois and Deere's information is retained in Illinois.  The Defendants' use of portable electronic storage devices to copy, access, transfer and retain Deere's trade secrets, either occurred in Illinois or involved information created and stored in Illinois.  The injuries resulting from the Defendants' conduct at issue in this litigation were and will be felt by Deere in Illinois.

9.     This Court also has personal jurisdiction over Adrian Crawford as she contractually agreed to the jurisdiction of this Court in the Agreements.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Deere's claims occurred and the damages to Deere are felt in this District.

## FACTUAL ALLEGATIONS

### Deere's Business

11.    Deere is one of the oldest companies in the United States.  Deere is the world's largest manufacturer of agricultural equipment and a major producer of construction, forestry, and lawn and grounds care equipment.  Deere sells its products in the United States and around the world.

12.    Deere has developed certain proprietary, confidential and trade secret information related to its business and the needs of its customers.  This information is essential to Deere's continuing success.

13.     Deere has expended a substantial amount of time, money, and effort in developing its confidential and trade secret information.

**Seth Crawford's Duties at Deere and His Access to Deere's Confidential and Trade Secret Information.**

14.     Seth Crawford had been employed by Deere since 1997.  At the time of conclusion of his employment with Deere, Mr. Crawford held the position of Director, Global Customer & Product Support. Mr. Crawford previously held the position of Director, Worldwide Marketing and Support.

15.     Mr. Crawford's recent positions with Deere were significant, and he was a critical employee of Deere.

16.     As Director, Global Customer & Product Support, Mr. Crawford oversaw Deere's strategy, management, and development of current and future customer and product support technology, processes, offerings, and services.

17.     Mr. Crawford's responsibilities included but were not limited to the following: integrated processes and systems for customer and product support (including customer-facing and dealer-facing technology, capabilities, processes, systems, and programs), strategic planning and support for quality and uptime initiatives (such as those related to returns and allowances and product improvement programs), strategic planning and support for the customer experience and after-sale contact, Connected Support and optimization (including enabling part and service information services, ideation and development of Expert Alerts, implementation and usage of Service Advisor software, fleet connection), and aftermarket parts and services growth (including John Deere Expert Services, extended warranties, and e-commerce), as well as the development of personnel and talent, data and analytics, and digitalization in these areas.

18.    As a result of his high-level position with Deere, Mr. Crawford was intimately familiar with Deere's confidential and/or trade secret information including, but not limited to, business strategies, financial or business projections, marketing plans, investments, arrangements and agreements with customers, upcoming technology and services for product and customer connectivity, customer and market analytics and projections, and other confidential information pertaining to valuable, special, or unique aspects of Deere's business activities.

19.    Specifically, Mr. Crawford had access to, and/or a significant role in developing, the strategic plans (including metrics, goals, and planned actions) for: the cost and efficiency of Deere's customer and dealer support organizations, the development and deployment of technology and programs in the area of customer and product support, product returns and allowances costs and rates, warranty rates and extended warranty sales and programs, responsiveness of Deere's dealer support organization, responsiveness of Deere's customer support organization, achieving Distinctive Product Quality for all of Deere's product lines, product improvement programs, the customer experience on all product platforms and in all geographic regions, Connected Support, Expert Services, and aftermarket sales and growth, among other items.

20.    This information constitutes commercially valuable information, is the subject of Deere's efforts to maintain secrecy or confidentiality, and is not reasonably ascertainable through lawful means.

21.    Mr. Crawford would have been denied intimate access to Deere's highly confidential, competitively sensitive information but for his position of trust and confidence with Deere and his written agreement not to use or disclose this information.  Only those people in a

need-to-know position at Deere, all of whom are also subject to confidentiality restrictions, are given access to such information.

22.     Upon the commencement of his employment in 1997, Seth Crawford agreed:

> Except as required by my duties for the Company, I will not use or give to others, either during or after my employment, any trade secret or confidential information belonging to the Company or others with whom the Company does business.  Examples of what may be considered as trade secrets or confidential are designs, processes, systems, computer programs, writings, research and development information, financial data, and marketing strategies.

*See* Employee Innovation & Proprietary Information Agreement (the "1997 Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**.  The 1997 Agreement further provided:

> Upon termination of my employment I will return to the Company all materials that relate to such trade secrets or confidential information.

(*Id.*)

23.     Mr. Crawford was a highly compensated employee at Deere.

24.     As a result of his high position with Deere, Mr. Crawford owed Deere a fiduciary duty including an undivided duty of loyalty to act in Deere's best interests and safeguard Deere's confidential and competitive business information and return and not use such information at the end of his employment with Deere.

**Adrian Crawford's Duties at Deere and Her Access to Deere's Confidential and Trade Secret Information.**

25.     Adrian Crawford had been employed by Deere since 2008.  At the time of conclusion of her employment with Deere, Ms. Crawford held the position of Manager, Enterprise Analytics Accelerator.

26.     Ms. Crawford's position with Deere was significant, and she was a critical employee of Deere.

27.     As Manager, Enterprise Analytics Accelerator, Ms. Crawford managed the strategy and execution of data analytics activities, the development of analytics programs, the leveraging of analytics insights, and the development of Deere's strategy for digitalization.

28.     As Manager, Enterprise Analytics Accelerator, Ms. Crawford's responsibilities included but were not limited to the following: Managing a team to deliver proofs of concept for analytics projects across the enterprise, plan and transform personnel and organizational processes for analytics enterprise-wide, and build on the security of IT by avoiding the loss of any Intellectual Property, and build analytics personnel talent and capabilities in these areas.

29.     Ms. Crawford was intimately familiar with Deere's confidential and/or trade secret information including, but not limited to, business strategies (including that related to digitalization), financial and business projections, marketing plans, investments, upcoming technology and services for product and customer connectivity, customer and market analytics and projections, and any other confidential information pertaining to valuable, special, or unique aspects of Deere's business activities.

30.     Specifically, Ms. Crawford had access to, and a significant role in developing, the strategic plans (including metrics, goals, and planned actions) for digitalization and data analytics efforts across Deere, and has also had access to Deere's processes and models for creating detailed forecasts for market and Deere demand for specific product lines, such as combines.

31.     This information constitutes commercially valuable information, is the subject of Deere's efforts to maintain secrecy or confidentiality, and is not reasonably ascertainable through lawful means.

32.     Ms. Crawford would have been denied intimate access to Deere's highly confidential, competitively sensitive information but for her position of trust and confidence with Deere and her written agreement not to use or disclose this information.  Only those people in a need-to-know position at Deere, all of whom are also subject to confidentiality restrictions, are given access to such information.

33.     Upon the commencement of her employment in 2008, Adrian Crawford agreed:

> Except as required by my duties for the Company, I will not use or give to others, either during or after my employment, any trade secret or confidential information belonging to the Company or others with whom the Company does business.  Examples of what may be considered as trade secrets or confidential are designs, processes, systems, computer programs, writings, research and development information, financial data, and marketing strategies.

*See* Employee Innovation & Proprietary Information Agreement (the "2008 Agreement"), a true and correct copy of which is attached hereto as **Exhibit B**.  The 2008 Agreement further provided:

> Upon termination of my employment I will return to the Company all materials that relate to such trade secrets or confidential information.

(*Id.*)

34.     Ms. Crawford executed an additional Employee Innovation & Proprietary Information Agreement in 2009 in which she similarly agreed to maintain the confidential information and trade secrets that Deere entrusted with her, and that she "will not use or give to others, either during or after my employment, any trade secret or confidential information belonging to the Company" and that she "will return to the Company all materials that relate to

such trade secrets or confidential information." *See* Employee Innovation & Proprietary Information Agreement (the "2009 Agreement"), a true and correct copy of which is attached hereto as **Exhibit C**.

35.     Ms. Crawford executed an additional Employee Innovation & Proprietary Information Agreement in 2017 in which she similarly agreed to maintain the confidential information and trade secrets that Deere entrusted with her and return such information to Deere upon termination of her employment. *See* Employee Innovation & Proprietary Information Agreement (the "2017 Agreement"), a true and correct copy of which is attached hereto as **Exhibit D**.

36.     Specifically, Section 6(b) of the 2017 Agreement provides as follows:

> Disclosure and Use Restrictions. You agree and covenant: (i) to treat all Confidential Information as in accord with Deere & Company's Code of Business Conduct guidelines including without limitation adhering to all marking requirements; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be made available to any entity or person outside of the direct employ of Deere except as required in the performance of Your authorized employment duties and only after execution of a confidentiality agreement by the third party with whom Confidential Information will be shared; and (iii) not to access or use any Confidential Information, and not to copy or remove any Confidential Information from the premises or control of Deere, except as required in the performance of Your authorized employment duties and as permitted by Deere's written policies.

37.     In Section 11 of the 2017 Agreement, Ms. Crawford agreed to the jurisdiction of this Court:

> Governing Law; Jurisdiction and Venue. Unless not allowed by local law, this Agreement, for all purposes, shall be construed in accordance with the laws of the State of Illinois without regard to conflicts of law principles. Unless not allowed by local law, any action or proceeding by either You or Deere to enforce this Agreement shall be brought only in a court of competent jurisdiction located in the State of Illinois. You and Deere hereby irrevocably

submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

38.     Ms. Crawford was a highly compensated employee at Deere.

39.     As a result of her high position with Deere, Ms. Crawford owed Deere a fiduciary duty including an undivided duty of loyalty to act in Deere's best interests and safeguard Deere's confidential and competitive business information and return and not use such information at the end of her employment with Deere.

**Seth Crawford's Job Interview with Deere's Competitor and the Defendants' Actions of Removing Deere's Confidential and Trade Secrets Information.**

40.     Upon information and belief, beginning on or before May 3, 2019, and while still being employed by Deere, Seth Crawford engaged in secret and extensive communications with Deere's direct competitor, AGCO Corporation ("AGCO"), regarding a job.

41.     AGCO is an agricultural equipment manufacturer that sells products and services that compete with Deere worldwide.  AGCO is one of Deere's major competitors in the global agricultural equipment business.  The company is headquartered in Duluth, Georgia.

42.     Mr. Crawford's communications with AGCO included communications with Mr. Eric Hansotia, AGCO's Senior Vice President/Chief Operating Officer.

43.     Mr. Hansotia is a former high-level executive of Deere, whose termination from Deere's employment several years ago, led to litigation in this Court, with Deere asserting claims against Mr. Hansotia for trade secret misappropriation, breach of a confidentiality agreement, and breach of fiduciary duties.

44.     Upon information and belief, on May 14-15, 2019, Mr. Crawford travelled to Atlanta, Georgia to interview with AGCO.

45.    After the interview, on May 15, Mr. Hansotia called Mr. Crawford, and in the following week, Mr. Crawford had at least 9 phone calls with the Atlanta area code phone number 470-242-9070, as well as phone calls from other Atlanta area code numbers.

46.    On May 16, between 9:37 p.m. and 9:49 p.m., Adrian Crawford uploaded 213 MB of information to her personal Google account (Gmail and Google Drive) from her Deere-owned laptop computer, while connected to the internet via a non-Deere network.

47.    On May 16, between 10:53 p.m. and 11:36 p.m., Seth Crawford uploaded 4036 MB of information to his personal Google account (Gmail and Google Drive) from his Deere-owned laptop computer, while connected to the internet via a non-Deere network.  The uploaded files included, but were not limited to, the following Deere confidential business document:

- Summary review of Deere's Connected Support organization and offerings, strategy, growth plans, successes and challenges, number of machines with active telematics, and how often certain telematic customer support features were used, in file "[REDACTED] – 2018-12.pptx" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 16 at 10:59 p.m.

There was no business reason for Mr. Crawford to upload this information to his personal account.   This conduct was not in Deere's interest and was against Deere's interest.

48.    On May 17, between 8:13 p.m. to 9:15 p.m., Adrian Crawford uploaded 207 MB of information to her personal Google account from her Deere-owned laptop computer, while connected to the internet via a non-Deere network. The files uploaded to the Google account included, but were not limited, to the following Deere confidential business documents:

- A summary of key enterprise analytics projects, including descriptions of seven of the projects and their expected added value to Deere and Deere's customers, in the file "EAA summary 1 April 19.docx" which Ms. Crawford uploaded from her Deere-owned laptop to her personal Google account on May 17 at 8:38 p.m.

- An external consultant's strategy assessment for Deere's digital tools and customer technology, in the file "UPDATED JD ISG Digital Strategy Needs Assessment Summary Report 9-1-17.pptx" which Ms. Crawford uploaded from her Deere-owned laptop to her personal Google account on May 17 at 8:55 p.m.

- Detailed proprietary algorithms and models of forecasted demand for combine harvesters by power class for multiple years into the future, for each of Deere and nine competitors, for existing and unreleased products, in files "Combine population Corn & Soybeans oct10 request – scenarios.xlsx" and "Copy of New [REDACTED] Model_2017_GLTF July Update_2017 07 31.xlsx" which Ms. Crawford uploaded from her Deere-owned laptop to her personal Google account on May 17 at 9:07 p.m. and 9:08 p.m., respectively.

Ms. Crawford had no business need to access these particular documents at this time. There was no business reason for Ms. Crawford to upload these documents to her personal Google Drive account. This conduct was not in Deere's interest and was against Deere's interest.

49.    Upon information and belief, on May 17, Mr. Crawford communicated with AGCO on the phone, and AGCO extended him a written offer of employment.

50.    On May 20, between 10:01 p.m. and 10:23 p.m., Seth Crawford uploaded 23 MB to his Google account from his Deere-owned laptop computer, while connected to the internet via

a non-Deere network. The files sent to the Google account included, but were not limited to, the

following Deere confidential business documents:

- Detailed financial reports for the Agriculture & Turf division of Deere (including the identification of the factors driving the markets and financials, detailed reporting by region and product line including market share and profitability, breakdowns of research and development spending) in files "AT Divisional Financial Summary APRFY19_FinalSendout.pdf" and "AT Division Financial Summary APRFY19_FinalSendout.xlsb" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:23 p.m.

- A recent review of the aftermarket business of the Construction & Forestry division of Deere for the President of that division (including detailed and non-public financials, metrics, projections, profitability improvement plan with planned projects and actions, competitive benchmarks and market positioning, key vendors and partners, and supporting marketing and channel plans), in file "Master – JF Slides May 2019 Final.pdf" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:01 p.m.

- Reports of the worldwide parts business of Deere (including detailed and non-public financials, forecasts, and performance metrics by year, division, region, and identified key factors driving these results), in files "Apr19.pptx" and "Monthly Reports – Apr19 Sendout.xls" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:12 p.m.

- Reports on Deere returns and allowances across the entire company (including a breakdown of unit sales, returns and allowances, warranty claims, and product improvement programs for every Deere product line), in files "2019 RA Cover Letter Q2.docx" and "Q2 FY2019 Return and Allowance Report.xlsx" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:08 p.m.

Mr. Crawford had no business need to send these particular documents to his personal

Google account at that time. This conduct was not in Deere's interest and was against Deere's

interest.

51.     The Defendants' Deere-owned laptops each had a VPN (Virtual Private Network) application installed which allowed them to securely remotely access Deere's networks and systems, and access business documents. Defendants both had access to and regularly used this VPN application to remotely access Deere's confidential information, including in May of 2019. Adrian Crawford connected over VPN to Deere's systems on May 16 from 8:30 p.m. to 9:36 p.m., and terminated the VPN session just before she started uploading data to her personal Google account at 9:37 p.m. Seth Crawford connected over VPN to Deere's systems on May 16 from 9:22 p.m. to 10:45 p.m., and terminated the VPN session just before he started uploading data from his Deere-owned computer to his personal Google account at 10:53 p.m.  It was contrary to Deere's policies for either Defendant to move Deere confidential information to a personal e-mail or cloud account, Google Drive, or other third-party storage location.

52.     The documents removed by the Crawfords as set forth in Paragraphs 46, 47, 48 and 50 (hereinafter, "Removed Deere Confidential Information and Trade Secrets") are highly confidential, and the Crawfords carefully selected and removed these documents for their own benefit, contrary to their obligations to Deere and without Deere's permission in the weeks and days prior to Mr. Crawford's resignation of employment.

53.     Access to the Removed Deere Confidential Information and Trade Secrets would be a windfall to a competitor providing it with an enormous and unfair competitive advantage allowing them, among other things, knowledge of Deere's detailed financial data, including profitability, margins, and quality by geography and product line, past projects and the impact on Deere's business and customers, existing projects, planned projects, the identity of key vendors and partners, major overall strategies of Deere, and specific tactical strategies of key departments

and functions.  It would also allow AGCO and the Defendants to undermine Deere's market position by exploiting the Removed Deere Confidential Information and Trade Secrets.

54.     There was no Deere business reason for Seth Crawford to send and upload Deere's highly confidential documents to his personal devices and accounts at the times he did so, and especially after interviewing with AGCO and receiving a job offer and planning his exit.

55.     There was no Deere business reason for Adrian Crawford to upload Deere's highly confidential documents to her personal devices and accounts at the time she did so, and especially while knowing that she and her husband were on the way out of Deere and were going to resign shortly.

56.     Upon information and belief, on or about June 2, 2019, Mr. Crawford formally accepted AGCO's offer of employment.

57.     The following day, on June 3, Mr. Crawford submitted a letter of resignation to Deere, informing the company that he had accepted a position with AGCO as its Vice President, Fuse Connected Services and Technology, a true and correct copy of which is attached hereto as **Exhibit E**.  In that letter of resignation, Mr. Crawford states:

> I also want to emphasize that I have not disclosed and will not disclose any of John Deere's proprietary or confidential information or trade secrets. . . . In this regard, I have not copied, downloaded, or otherwise taken any proprietary or confidential information, trade secrets, or other property of John Deere, and I will not do so at any time.

58.     Contrary to his explicit assertions in the letter of resignation, Mr. Crawford had already taken Deere confidential information and trade secrets, on at least May 16 (see paragraph 47, above) and May 20 (see paragraph 50, above), when he uploaded 4059 MB from his Deere-owned laptop computer to his personal Google account, including numerous highly confidential

Deere documents, and sent multiple emails attaching highly confidential Deere documents between his personal Gmail account and his personal Hotmail account.

59.     Deere terminated Adrian Crawford's employment on June 3, for inappropriately downloading highly confidential Deere documents to her personal Google account, and for insubordination and failing to cooperate in that she initially lied to Deere's representatives by denying that she had downloaded any highly confidential Deere documents to her personal Google account, and then refused to answer Deere's representatives' questions concerning her actions.

**Deere's investigation of the Crawfords' activities.**

60.     Following termination of the Defendants' employment with Deere, Deere sent preservation and demand letters on June 5 and again on June 13 to AGCO and the Defendants requesting the preservation of evidence in this matter, demanding the return of Deere's stolen business information and demanding cooperation in the investigation of the Defendants' activities and for them to provide candid explanations of their activities under oath.

61.     Counsel for AGCO and Defendants represented that the Crawfords would cooperate and that Mr. Crawford was not scheduled to begin employment until the fall and Ms. Crawford would not be employed by AGCO.

62.     The Crawfords and AGCO initially cooperated by allowing a review of various devices and accounts owned by the Crawfords.

63.     Based on a review of the devices and accounts produced by the Crawfords, Deere has not been able to account for all of the information transferred by the Crawfords to their personal devices and accounts.

64.     Of the nearly 4479 MB which the Defendants uploaded late in the evenings on May 16, May 17, and May 20, Deere has been able to determine a number of confidential documents taken, but has not been able to account for all of the information transferred, nor all the locations and persons to which Deere's information has been sent.

65.     As one non-limiting example, Deere has confirmed that on May 16, at approximately 10:54 p.m. and 10:58 p.m., Seth Crawford forwarded two emails from his personal Gmail account at sethhcrawford@gmail.com account to another personal email account at sethhcrawford@hotmail.com, with multiple highly confidential Deere files attached to those emails, some of which Mr. Crawford had previously uploaded from his Deere-owned computer work email to his Google account. The attached documents included:

- Copy of Organizational Enablement Tracking Sheet.xlsx
- Copy of Prioritized Pairs Workbook 17 Trends - vSC 2017-09-26.xlsx
- CPS Video Sessions.docx
- EDGE 2018 Agenda Day 1.pdf
- Initial Observations.docx
- Non-Metric Letter 2017-03.pdf
- Product Recommend Trend - Large Combines USC.pptx
- sharepoint-audit.deere.pdf
- Recommendation Letter – [REDACTED].pdf
- SPFH OM 16 May 14 LJM-v2.pptx
- [REDACTED] Hydraulic Failures 16Aug2015.pptx
- [REDACTED CLIENT] Benchmarking Session_Agenda v2.docx
- [REDACTED CLIENT ] Benchmarking Session_Agenda Takeaways.docx
- [REDACTED CLIENT] - 2018-12.pptx

Forensic review of Mr. Crawford's accounts and devices has shown that these documents no longer reside in Mr. Crawford's Gmail account but are found in his Hotmail account. There is no way for Deere to independently confirm whether these documents have been transferred elsewhere.

66.     Similarly, as alleged in paragraph 50 above, on May 20, at 10:01 p.m., 10:08 p.m., 10:21 p.m., and 10:23 p.m., Mr. Crawford forwarded four emails from his personal Gmail account at sethhcrawford@gmail.com to his Hotmail email account at sethhcrawford@hotmail.com, with multiple highly confidential documents attached to those emails, which Mr. Crawford previously uploaded to his personal Google account from his Deere-owned laptop computer. The documents included:

- Master - JF Slides May 2019 Final.pdf
- 2019 RA Cover Letter Q2.docx
- Q2 FY2019 Return and Allowance Report.xlsx
- Apr.19.pptx
- Monthly Reports-Apr19 Sendout.xlsx
- AT Division Financial Summary APRFY19_FinalSendout.pdf
- AT Division Financial Summary APRFY19_FinalSendout.xlsb

In an attempt to hide his wrongful activities, Mr. Crawford transferred the "Apr.19.pptx" and "Monthly Reports-Apr19 Sendout.xlsx" documents from his Gmail account to his Hotmail account by attaching them to an e-mail with a subject line "house hunting."  Forensic review of Mr. Crawford's accounts and devices has shown that these documents no longer reside in Mr. Crawford's Google account but are found in his Hotmail account.  There is no way for Deere to independently confirm whether these documents have been transferred elsewhere.

67.     Considering the Defendants' wrongful conduct as they plotted their exit from Deere, and that the Defendants' unsworn representations regarding their actions lacked truthfulness and veracity, Deere has demanded that the Crawfords appear for a statement under oath to account for their activities and to identify the full extent of Deere confidential information taken and the locations and persons to which Deere confidential information has been transferred.

68.    The Defendants then refused to make themselves available to provide candid explanations under oath before a court reporter until Mr. Crawford made himself available and was interviewed on August 23, 2019.  Adrian Crawford has not agreed to be interviewed.

69.    After initially representing that it would cooperate in the investigation, and agreeing to stand down on starting Mr. Crawford, AGCO subsequently reversed the course, and allowed Mr. Crawford to start his employment with AGCO on August 5, 2019.

70.    By letter dated August 6, 2019 counsel for Defendants and AGCO informed Deere that Mr. Crawford began his employment on August 5 even though the investigation had not concluded.  Counsel for the Crawfords and AGCO represented that the Crawfords provided good explanations for their activity but refused to detail what that specific explanation was or explain the Deere business reason for their theft and removal of Deere's confidential business information.   The letter even admitted that they themselves had not completed their own investigation.

### Deere's Measures to Protect Its Confidential Information and Trade Secrets

71.    Deere has taken and continues to take reasonable measures through a defense in depth strategy that deploys technologies, processes, and people to protect its confidential information and trade secrets, including the trade secrets described in paragraphs 46, 47, 48, and 50 above.  The Defendants had laptop computers issued by Deere.  Deere laptops are encrypted and password-protected to prevent unauthorized access to Deere's confidential information and trade secrets.  To access a Deere laptop, the employee has to enter at least two passwords – one for the hard drive encryption and the second for access to Windows and certain business applications.  Information located on Deere's servers, other than information available to the

general public through Deere's public websites, can be accessed only through Deere-issued accounts that are password-protected.

72.    Email tagged with a sensitivity of "confidential" and sent outside of Deere is automatically encrypted, requiring a login and password on a secure site in order to view the email.  A recipient of a confidential email would have a limited ability to forward the email.

73.    Deere also has strict policies for how to handle confidential information and trade secrets.  Employees are required to sign confidentiality agreements.  Deere strictly prohibits unauthorized disclosure of such information, as explained in Deere's Code of Business Conduct, Global Electronic Resources Policy, and Global Information Classification Policy.  Deere's policies regarding confidential information are available online for employees and electronic training is periodically conducted.

74.    In addition, electronic training is conducted periodically regarding Deere's policies and Code of Business Conduct, including for example, the courses "An Introduction to Cyber Security," "Engineering Intellectual Property Protection (IPP) Advanced Security Training," "GIS - Security Awareness," "Global Information Classification Policy," "Information Compliance," "Information Security," "Intellectual Property in the Information Age," "Understanding E-mail Dos and Don'ts," and "What You Need to Know About E-mail." Between 2007 and 2018, Mr. Crawford took each of these example courses. Between 2009 and 2018, Ms. Crawford took each of these example courses.

75.    Deere employees, including the Defendants, are asked to provide an annual certification of compliance with Deere's Code of Business Conduct.  The Defendants certified that they read, understood, and would comply with Deere's Code of Business Conduct annually,

and provided such a certification as recently as September 18, 2018 by Seth Crawford and December 3, 2018 by Adrian Crawford. In these 2018 certifications, Defendants each certified that they understood that "it is important that you keep in mind your obligation to protect information that is either owned by Deere or in your possession while employed with Deere."

76.     Deere utilizes shredders to dispose of hard copies of confidential documents and employees are frequently reminded of Deere's confidentiality expectations.

77.     Deere performs bi-annual reviews where owners of confidential information are asked to review the list of individuals with access to the information to ensure only those on a need-to-know basis are listed.

78.     Deere-owned computers are set by default to block USB write access, to prevent USB storage drives from being used to take Deere confidential files off the computers.

79.     Each of Defendants' Deere-owned laptop computers had USB write access blocked in May of 2019.

80.     The trade secret information that the Defendants have, including the information described in paragraphs 46, 47, 48, and 50 above, was only provided to the Defendants and a limited and select group of others who had agreements to maintain the confidentiality of such information.  Such information was disseminated only to a limited number of executives and high-level employees on a need-to-know basis.  All such individuals, including the Defendants, had contractual, fiduciary and statutory duties to maintain the confidentiality of such information.

81.     Shortly after their employment ended, the Defendants were reminded of their confidentiality obligations by a letter sent by Deere to them.

**FIRST CAUSE OF ACTION**

**(Trade Secret Misappropriation Under the Defend Trade Secrets Act, 18 U.S.C. § 1836)**

82.    Plaintiff incorporates by reference its allegations above as if fully re-written.

83.    Deere is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate or foreign commerce.  Such information includes but is not limited to the Removed Deere Confidential Information and Trade Secrets.

84.    The information that the Defendants stole from Deere, including, but not limited to, the Removed Deere Confidential Information and Trade Secrets, is a "trade secret" as this term is defined under 18 U.S.C. § 1839(3).

85.    Deere took affirmative steps to maintain the confidentiality of such information, which were reasonable under the circumstances.

86.    The information that the Defendants stole from Deere, including, but not limited to, the Removed Deere Confidential Information and Trade Secrets, derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

87.    Deere derives great value from the fact that this information is not readily ascertainable by others, particularly competitors. The information provides a significant competitive advantage.

88.    The Defendants misappropriated Deere's trade secrets by acquiring them by improper means, including, but not limited to, theft and breach of a duty to maintain secrecy of Deere's trade secrets.

89.    The Defendants' misappropriation of Deere's trade secret and proprietary information constitutes a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

90.    Deere has been and is being damaged by the Defendants' misappropriation of its trade secrets.  The damage to Deere may include, but is not limited to, loss of information, loss of the secrecy of the information, lost customers, potential lost business opportunities, loss of employees and potential employees, and a disadvantaged market position.  These and other damages suffered by Deere are irreparable.

91.    The Defendants' conduct has caused and will continue to cause irreparable harm for which Deere has no adequate remedy at law. The Defendants should be immediately enjoined from any continued use of Deere's trade secrets and should be enjoined from sharing the unlawfully retained information with others, including Mr. Crawford's new employer.

92.    Deere is entitled to an award of damages in the amount of Deere's actual losses and the Defendants' unjust enrichment, including attorneys' fees and costs.

93.    The Defendants' duplicitous activities to misappropriate Deere's trade secrets despite an express agreement not to remove such information constitutes willful and malicious conduct warranting an award of exemplary damages.

## SECOND CAUSE OF ACTION
### (Trade Secret Misappropriation, 765 ILCS 1065/2)

94.    Plaintiff incorporates by reference its allegations above as if fully re-written.

95.    The information stolen by the Defendants derives independent economic value for Deere, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use.

96.     The information accessed and stolen by the Defendants constitutes trade secrets as that term is defined under Illinois law.

97.     Deere took affirmative steps to maintain the confidentiality of such information, which were reasonable under the circumstances, and restricting the transmission of Deere's confidential information and trade secrets.

98.     The Defendants were, and still are, under a duty to maintain the secrecy of all such information.

99.     The Defendants misappropriated Deere's trade secrets by acquiring them by improper means, including, but not limited to, theft and breach of a duty to maintain secrecy of Deere's trade secrets.

100.    These duplicitous actions were motivated by the Defendants' intent to serve their own personal benefit and not for the benefit of Deere.

101.    As a proximate result of their actions, the Defendants have reaped the benefits due to Deere, and have been unjustly enriched.

102.    The Defendants are directly liable for trade secret violations under Illinois law.

103.    Deere has been and is being damaged by the Defendants' misappropriation of its trade secrets.  The damage to Deere may include, but is not limited to, loss of information, loss of the secrecy of the information, lost customers, potential lost business opportunities, loss of employees and potential employees, and a disadvantaged market position.  These and other damages suffered by Deere are irreparable.

104.    Deere will suffer irreparable damage unless the Defendants are enjoined by the Court from their continued misappropriation of Deere's trade secrets and reaping the benefits thereof.

105.    Deere is entitled to compensatory damages in an amount to be determined at trial. In light of the willfulness of the conduct of the Defendants, Deere is entitled to punitive/exemplary damages and its actual attorneys' fees pursuant to applicable law.

### THIRD CAUSE OF ACTION
**(Breach of Contract-Against Seth Crawford)**

106.    Plaintiff incorporates by reference its allegations above as if fully re-written.

107.    Mr. Crawford is a party to the Employee Innovation & Proprietary Information Agreement with Deere.

108.    The Agreement is valid and enforceable under Illinois law.

109.    Deere has performed all of its obligations under the Agreement.

110.    In Section 3 of the Agreement, Mr. Crawford agreed that upon termination of his employment with Deere, he would return to Deere all materials that relate to Deere's trade secrets and confidential information.

111.    Mr. Crawford has breached the Agreement not only by failing to return to Deere all of the materials relating to Deere's trade secrets and confidential information but also by, among other things, improperly accessing files containing Deere's confidential and trade secret information, removing and retaining Deere's confidential and trade secret information after termination of his employment, and transferring such information outside of Deere without permission or consent of Deere on the way out of Deere.

112.    As a direct and proximate result of Mr. Crawford's breaches, Deere has suffered direct and consequential damages in an amount to be proven at trial and is entitled to injunctive relief.

### FOURTH CAUSE OF ACTION
**(Breach of Contract-Against Adrian Crawford)**

113.    Plaintiff incorporates by reference its allegations above as if fully re-written.

114.    Ms. Crawford is a party to three Employee Innovation & Proprietary Information Agreements with Deere.

115.    The Agreements are valid and enforceable under Illinois law.

116.    Deere has performed all of its obligations under the Agreements.

117.    In Section 3 of the 2008 Agreement and the 2009 Agreement, Ms. Crawford agreed that upon termination of her employment with Deere, she would return to Deere all materials that relate to Deere's trade secrets and confidential information.

118.    Section 6(b) of the 2017 Agreement prohibits Ms. Crawford from copying or removing "any Confidential Information from the premises or control of Deere, except as required in the performance of [her] authorized employment duties and as permitted by Deere's written policies."

119.    Ms. Crawford has breached the Agreements not only by failing to return to Deere all of the materials relating to Deere's trade secrets and confidential information but also by, among other things, improperly accessing files containing Deere's confidential and trade secret information, removing and retaining Deere's confidential and trade secret information after termination of her employment, and transferring such information outside of Deere without permission or consent of Deere on the way out of Deere.

120.    Ms. Crawford's actions of removing Deere's trade secret and confidential information were not required in the performance of her authorized employment duties and were not permitted by Deere's written policies.

121.    As a direct and proximate result of Ms. Crawford's breaches, Deere has suffered direct and consequential damages in an amount to be proven at trial and is entitled to injunctive relief.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

122.    Plaintiff incorporates by reference its allegations above as if fully re-written.

123.    As employees of Deere, both Seth Crawford and Adrian Crawford owed certain fiduciary duties to Deere, including, without limitation, the fiduciary duties of loyalty, care, and good faith.

124.    In breach of these fiduciary duties, the Defendants misappropriated Deere's trade secrets and confidential information for the benefit of themselves and deprived Deere of their loyal services.

125.    As a direct and proximate result of Ms. Crawford's breaches, Deere has suffered direct and consequential damages in an amount to be proven at trial and is entitled to injunctive relief.

126.    Unless enjoined, the Defendants' unlawful acts will materially and irreparably injure Deere's business in a manner that cannot be adequately compensated in money damages. Deere will unfairly and unlawfully lose the competitive advantages that it enjoys as a result of its confidential information and suffer further damage to its goodwill and the loss of actual prospective customers.

## **PRAYER FOR RELIEF**

WHEREFORE, Deere requests that this Court enter judgment against the Defendants awarding:

A.      Judgment against the Defendants, and those acting in privity or concert with them, for injunctive and equitable relief in the form requested;

B.      Judgment against the Defendants for monetary damages;

C.      Judgment in Deere's favor against the Defendants on all causes of action alleged in the Complaint;

D.      Accounting and return of all documents stolen/removed/misappropriated by Defendants

E.      Exemplary damages under the DTSA;

F.      Exemplary damages under 765 ILCS 1065/4(b);

G.      Forensic analysis fees and costs;

H.      Attorneys' fees and costs; and

I.      Such other relief as the Court may deem just and equitable.

**PLAINTIFF DEMANDS TRIAL BY A 12-PERSON JURY.**

Dated: September 9, 2019

Respectfully submitted,
DEERE & COMPANY,
Plaintiff,


/s/ *Eric H. Rumbaugh*
One of Its Attorneys

Eric H. Rumbaugh, WI State Bar No.:  1015164
Victor J. Allen, IL State Bar No.: 6304576
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202
Telephone:  (414) 271-6560
Facsimile:(414)277-0656