IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY, </br></br>Plaintiff, </br></br>v. </br></br>SETH CRAWFORD, </br>ADRIAN CRAWFORD, </br></br>Defendants. | Case No. _____ |

## DECLARATION OF DAVID GILMORE

David Gilmore, being duly sworn on oath and with knowledge of the matters testified to herein, states, affirms and declares the following facts are personally known to him:

1. I am an adult.

2. I work for Deere & Company ("Deere"), and my title is Senior Vice President – Global Marketing – A&T.

3. Deere is one of the oldest companies in the United States. Deere is the world's largest manufacturer of agricultural equipment and a major producer of construction, forestry, and lawn and grounds care equipment. Deere sells its products in the United States and around the world.

4. Deere has developed certain proprietary, confidential and trade secret information related to its business and the needs of its customers. This information is essential to Deere's continuing success.

5. Deere has expended a substantial amount of time, money, and effort in developing its confidential and trade secret information.

6. Seth Crawford had been employed by Deere since 1997. At the time of conclusion of his employment with Deere, Mr. Crawford held the position of Director, Global Customer & Product Support and reported to me. Mr. Crawford previously held the position of Director, Worldwide Marketing and Support.

7. Mr. Crawford's recent positions with Deere were significant, and he was a critical employee of Deere.

8. As Director, Global Customer & Product Support, Mr. Crawford oversaw Deere's strategy, management, and development of current and future customer and product support technology, processes, offerings, and services.

9. Mr. Crawford's responsibilities included but were not limited to the following: integrated processes and systems for customer and product support (including customer-facing and dealer-facing technology, capabilities, processes, systems, and programs), strategic planning and support for quality and uptime initiatives (such as those related to returns and allowances and product improvement programs), strategic planning and support for the customer experience and after-sale contact, Connected Support and optimization (including enabling part and service information services, ideation and development of Expert Alerts, implementation and usage of Service Advisor software, fleet connection), and aftermarket parts and services growth (including John Deere Expert Services, extended warranties, and e-commerce), as well as the development of personnel and talent, data and analytics, and digitalization in these areas.

10. As a result of his high-level position with Deere, Mr. Crawford was intimately familiar with Deere's confidential and/or trade secret information including, but not limited to, business strategies, financial or business projections, marketing plans, investments, arrangements and agreements with customers, upcoming technology and services for product and customer connectivity, customer and market analytics and projections, and other confidential information pertaining to valuable, special, or unique aspects of Deere's business activities.

11. Specifically, Mr. Crawford had access to, and/or a significant role in developing, the strategic plans (including metrics, goals, and planned actions) for: the cost and efficiency of Deere's customer and dealer support organizations, the development and deployment of technology and programs in the area of customer and product support, product returns and allowances costs and rates, warranty rates and extended warranty sales and programs, responsiveness of Deere's dealer support organization, responsiveness of Deere's customer support organization, achieving Distinctive Product Quality for all of Deere's product lines, product improvement programs, the customer experience on all product platforms and in all geographic regions, Connected Support, Expert Services, and aftermarket sales and growth, among other items.

12. This information constitutes commercially valuable information, is the subject of Deere's efforts to maintain secrecy or confidentiality, and is not reasonably ascertainable through lawful means.

13. Mr. Crawford would have been denied intimate access to Deere's highly confidential, competitively sensitive information but for his position of trust and confidence with Deere and his written agreement not to use or disclose this information. Only those people in a

need-to-know position at Deere, all of whom are also subject to confidentiality restrictions, are given access to such information.

14. Upon the commencement of his employment in 1997, Seth Crawford signed the Employee Innovation & Proprietary Information Agreement, a true and correct copy of which is attached hereto as **Exhibit A**.

15. Mr. Crawford was a highly compensated employee at Deere.

16. AGCO Corporation ("AGCO") is an agricultural equipment manufacturer that sells products and services that compete with Deere worldwide. AGCO is one of Deere's major competitors in the global agricultural equipment business. The company is headquartered in Duluth, Georgia.

17. Mr. Eric Hansotia, AGCO's Senior Vice President/Chief Operating Officer, is a former high-level executive of Deere.

18. Access to the documents removed by Seth Crawford would be a windfall to a competitor providing it with an enormous and unfair competitive advantage allowing them, among other things, knowledge of Deere's detailed financial data, including profitability, margins, and quality by geography and product line, past projects and the impact on Deere's business and customers, existing projects, planned projects, the identity of key vendors and partners, major overall strategies of Deere, and specific tactical strategies of key departments and functions. It would also allow AGCO and the Defendants to undermine Deere's market position by exploiting the documents removed by the Defendants.

19. The trade secret information that Seth Crawford has was only provided to the Defendants and a limited and select group of others who had agreements to maintain the

confidentiality of such information. Such information was disseminated only to a limited number of executives and high-level employees on a need-to-know basis. All such individuals, including the Defendants, had contractual, fiduciary and statutory duties to maintain the confidentiality of such information.

20. A true and correct copy of Seth Crawford's resignation letter is attached hereto as **Exhibit B**.

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23 day of August, 2019.

_____
David Gilmore
Senior Vice President – Global Marketing – A&T
Deere & Company

5