IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| DEERE & COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:19-cv-04178 |
| SETH CRAWFORD, ADRIAN CRAWFORD, | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff Deere & Company ("Deere") seeks temporary and preliminary injunctive relief to restrain Defendants Seth Crawford and Adrian Crawford ("the Crawfords"), from using, disclosing, copying, transferring, and possessing Deere's confidential information and trade secrets. The Crawfords, who had been long time and critical employees of Deere, decided in May of 2019 to leave the employment of Deere, with Seth Crawford taking a job with AGCO Corporation ("AGCO"), one of Deere's primary competitors in the agricultural equipment industry.

Shortly after Seth Crawford interviewed for a job at AGCO on May 15, 2019, the Crawfords repeatedly improperly accessed, copied, transferred, and retained Deere's confidential information and trade secrets. Specifically, in the evenings of May 16, 17, and 20, they sent Deere's highly confidential business information from their Deere-owned laptops to their personal Google and Hotmail email and cloud accounts. Seth Crawford then also forwarded Deere's highly confidential documents from his personal Gmail account to his personal Hotmail account. The

Crawfords had no legitimate Deere business reason to engage in such actions, especially knowing that they were on the way out of the Company. By stealing Deere's confidential information and trade secrets, the Crawfords violated federal and state trade secret laws, breached their confidentiality agreements with Deere, and breached their duties of loyalty to the Company.

The Defendants' theft of Deere's confidential information has already irreparably damaged Deere. Moreover, the irreparable damages to Deere stand only to accelerate now that Seth Crawford has recently begun his employment with AGCO. Deere asks this Court to stop the Defendants' illegal conduct and to prevent further irreparable injury to Deere.

## STATEMENT OF FACTS

Deere refers to and incorporates herein the allegations contained in its Complaint. *See* Compl., ¶¶ 11-81; Doc. # 1. Deere also refers to and incorporates herein the assertions contained in the Declarations of David Gilmore, Terry Goerdt, Jason Beneke, Dennis Bode, Wendy Davies-Popelka, John Yattoni, Kevin Larson, Ryan Blades, Angela Johanningmeier, Matthew Stippich, and Eric H. Rumbaugh filed herewith.

**A. The Defendants' Duties at Deere and Their Access to Deere's Confidential and Trade Secret Information.**

Seth Crawford had been employed by Deere since 1997. Gilmore Decl., ¶ 6. At the time of conclusion of his employment with Deere, Mr. Crawford held the position of Director, Global Customer & Product Support. *Id.* At Deere, Mr. Crawford had access to, and/or a significant role in developing, the strategic plans (including metrics, goals, and planned actions) for: the cost and efficiency of Deere's customer and dealer support organizations, the development and deployment of technology and programs in the area of customer and product support, product returns and allowances costs and rates, warranty rates and extended warranty sales and programs,

responsiveness of Deere's dealer support organization, responsiveness of Deere's customer support organization, achieving Distinctive Product Quality for all of Deere's product lines, product improvement programs, the customer experience on all product platforms and in all geographic regions, Connected Support, Expert Services, and aftermarket sales and growth, among other items.  Gilmore Decl., ¶ 11.

Adrian Crawford had been employed by Deere since 2008.  Goerdt Decl., ¶ 3.  At the time of conclusion of her employment with Deere, Ms. Crawford held the position of Manager, Enterprise Analytics Accelerator.  *Id.*  At Deere, Ms. Crawford had access to, and a significant role in developing, the strategic plans (including metrics, goals, and planned actions) for digitalization and data analytics efforts across Deere, and has also had access to Deere's processes and models for creating detailed forecasts for market and Deere demand for specific product lines, such as combines.  *Id.*, ¶ 8.

The Crawfords executed a number of confidentiality agreements with Deere, in which they agreed, among other things, that upon termination of their employment with Deere, they "will return to the Company all materials that relate to such trade secrets or confidential information." Gilmore Decl., ¶ 14; Goerdt Decl., ¶¶ 11-13.

### B. Deere's Measures to Protect Its Confidential Information and Trade Secrets

Deere has taken and continues to take reasonable measures to protect its confidential information and trade secrets.  Beneke Decl., ¶¶ 12-18.  Deere laptops are encrypted and password-protected to prevent unauthorized access to Deere's confidential information and trade secrets.  *Id.*  Email tagged with a sensitivity of "confidential" and sent outside of Deere is automatically

encrypted, requiring a login and password on a secure site in order to view the email. *Id.*, ¶ 11. A recipient of a confidential email would have a limited ability to forward the email. *Id.*

Deere also has strict policies for how to handle confidential information and trade secrets. *Id.*, ¶ 12. Employees are required to sign confidentiality agreements. *Id.* Deere strictly prohibits unauthorized disclosure of such information, as explained in Deere's Code of Business Conduct, Global Electronic Resources Policy, and Global Information Classification Policy. Deere's policies regarding confidential information are available online for employees and electronic training is periodically conducted. *Id.*

Deere employees, including the Defendants, are asked to provide an annual certification of compliance with Deere's Code of Business Conduct. The Defendants certified that they read, understood, and would comply with Deere's Code of Business Conduct annually, and provided such a certification as recently as September 18, 2018 by Seth Crawford and December 3, 2018 by Adrian Crawford. Davies-Popelka Decl., ¶ 4.

Deere utilizes shredders to dispose of hard copies of confidential documents and employees are frequently reminded of Deere's confidentiality expectations. Beneke Decl., ¶ 15. Deere performs bi-annual reviews where owners of confidential information are asked to review the list of individuals with access to the information to ensure only those on a need-to-know basis are listed. *Id.*, ¶ 16.

C. **The Defendants' Actions of Removing Deere's Confidential and Trade Secrets Information.**

As part of its investigation, as reflected in paragraphs 3 through 11 of the Declaration of Jason Beneke, Deere discovered that shortly before the end of their employment with Deere, the

Crawfords improperly accessed, copied, transferred, and retained Deere's confidential information and trade secrets.

Specifically, after Mr. Crawford's job interview with AGCO on May 15, on the following day, on May 16, between 9:37 p.m. and 9:49 p.m., Adrian Crawford uploaded 213 MB of information to her personal Google account (Gmail and Google Drive) from her Deere-owned laptop computer, while connected to the internet via a non-Deere network. Rumbaugh Decl., ¶ 3, Exh. A, p. 12; Beneke Decl., ¶ 4.

On May 16, between 10:53 p.m. and 11:36 p.m., Seth Crawford uploaded 4036 MB of information to his personal Google account (Gmail and Google Drive) from his Deere-owned laptop computer, while connected to the internet via a non-Deere network. *Id.*, ¶ 5. The uploaded files included, but were not limited to, the following Deere confidential business document:

- Summary review of Deere's Connected Support organization and offerings, strategy, growth plans, successes and challenges, number of machines with active telematics, and how often certain telematic customer support features were used, in file "[REDACTED] – 2018-12.pptx" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 16 at 10:59 p.m.

*Id.*; Johanningmeier Decl., ¶ 4.

On May 17, between 8:13 p.m. to 9:15 p.m., Adrian Crawford uploaded 207 MB of information to her personal Google account from her Deere-owned laptop computer, while connected to the internet via a non-Deere network. Beneke Decl., ¶ 6. The files uploaded to the Google account included, but were not limited, to the following Deere confidential business documents:

- A summary of key enterprise analytics projects, including descriptions of seven of the projects and their expected added value to Deere and Deere's customers, in the

file "EAA summary 1 April 19.docx" which Ms. Crawford uploaded from her Deere-owned laptop to her personal Google account on May 17 at 8:38 p.m.

- An external consultant's strategy assessment for Deere's digital tools and customer technology, in the file "UPDATED JD ISG Digital Strategy Needs Assessment Summary Report 9-1-17.pptx" which Ms. Crawford uploaded from her Deere-owned laptop to her personal Google account on May 17 at 8:55 p.m.

- Detailed proprietary algorithms and models of forecasted demand for combine harvesters by power class for multiple years into the future, for each of Deere and nine competitors, for existing and unreleased products, in files "Combine population Corn & Soybeans oct10 request – scenarios.xlsx" and "Copy of New [REDACTED] Model_2017_GLTF July Update_2017 07 31.xlsx" which Ms. Crawford uploaded from her Deere-owned laptop to her personal Google account on May 17 at 9:07 p.m. and 9:08 p.m., respectively.

*Id.*; Goerdt Decl., ¶¶ 16-17; Bode Decl., ¶ 4.

On May 20, between 10:01 p.m. and 10:23 p.m., Seth Crawford uploaded 23 MB to his Google account from his Deere-owned laptop computer, while connected to the internet via a non-Deere network. Beneke Decl., ¶ 7. The files sent to the Google account included, but were not limited to, the following Deere confidential business documents:

- Detailed financial reports for the Agriculture & Turf division of Deere (including the identification of the factors driving the markets and financials, detailed reporting by region and product line including market share and profitability, breakdowns of research and development spending) in files "AT Divisional Financial Summary APRFY19_FinalSendout.pdf" and "AT Division Financial Summary APRFY19_FinalSendout.xlsb" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:23 p.m.

- A recent review of the aftermarket business of the Construction & Forestry division of Deere for the President of that division (including detailed and non-public financials, metrics, projections, profitability improvement plan with planned projects and actions, competitive benchmarks and market positioning, key vendors and partners, and supporting marketing and channel plans), in file "Master – JF Slides May 2019 Final.pdf" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:01 p.m.

- Reports of the worldwide parts business of Deere (including detailed and non-public financials, forecasts, and performance metrics by year, division, region, and

6

identified key factors driving these results), in files "Apr19.pptx" and "Monthly Reports – Apr19 Sendout.xls" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:12 p.m.

- Reports on Deere returns and allowances across the entire company (including a breakdown of unit sales, returns and allowances, warranty claims, and product improvement programs for every Deere product line), in files "2019 RA Cover Letter Q2.docx" and "Q2 FY2019 Return and Allowance Report.xlsx" which Mr. Crawford uploaded from his Deere-owned laptop to his personal Google account on May 20 at 10:08 p.m.

*Id.*; Larson Decl., ¶¶ 4-5; Blades Decl., ¶ 4; Yattoni Decl., ¶ 4.

Adrian Crawford's upload activities on May 16 and 17 were atypical for her, in terms of data uploaded from her Deere-owned laptop to her personal Google account. Beneke Decl., ¶ 8. She made no such uploads from January 1, 2018 through May 11, 2019, and she averaged 17.8 MB per day in such uploads from May 12 through May 15. *Id.*

Seth Crawford's upload activities on May 16 and 20 were atypical for him, in terms of data uploaded from his Deere-owned laptop to his personal Google account. *Id.* ¶ 9. He made no such uploads from January 1, 2018 through March 7, 2019, and he averaged 0.01 MB per day in such uploads from March 8, 2019 through May 15. *Id.*

Access to documents removed by the Crawfords as set forth above (hereinafter, "Removed Deere Confidential Information and Trade Secrets") would be a windfall to a competitor providing it with an enormous and unfair competitive advantage, allowing them, among other things, knowledge of Deere's detailed financial data, including profitability, margins, and quality by geography and product line, past projects and the impact on Deere's business and customers, existing projects, planned projects, the identity of key vendors and partners, major overall strategies of Deere, and specific tactical strategies of key departments. Gilmore Decl., ¶ 18; Goerdt Decl., ¶ 18. It would also allow AGCO and the Defendants to undermine Deere's market position

by exploiting the Removed Deere Confidential Information and Trade Secrets. *Id.* Mr. Crawford already began his employment with AGCO. Rumbaugh Decl., ¶ 3, Exh. A, p. 6.

There was no Deere business reason for the Defendants to send and upload the Removed Deere Confidential Information and Trade Secrets to their personal devices and accounts at the times they did so, and especially while they were planning their exit from the Company and Mr. Crawford interviewing for a job with AGCO and receiving a job offer therefrom. Bode Decl., ¶ 3; Blades Decl., ¶ 3; Goerdt Decl., ¶ 15; Larson Decl., ¶ 3; Yattoni Decl., ¶ 3.

After accepting AGCO's offer of employment on June 2, 2019, Mr. Crawford submitted his letter of resignation to Deere the following day. Gilmore Decl., ¶ 20. Contrary to explicit assertions in his resignation letter that he had not "copied, downloaded, or otherwise taken any proprietary or confidential information, trade secrets, or other property of [the Company]," Mr. Crawford had in fact taken Deere confidential information and trade secrets, on at least May 16 and May 20. *Id.*

Deere terminated Adrian Crawford's employment on June 3, for inappropriately downloading highly confidential Deere documents to her personal Google account, and for insubordination and failing to cooperate in that she initially lied to Deere's representatives by denying that she had downloaded any highly confidential Deere documents to her personal Google account, and then refused to answer Deere's representatives' questions concerning her actions. Goerdt Decl., ¶ 19.

D. **Deere's Investigation of the Crawfords' Activities after Termination of their Employment with Deere.**

Deere's forensic investigation further revealed that on May 16 and May 20, Mr. Crawford forwarded multiple e-mails from his personal Gmail account at setthcrawford@gmail.com to his

Hotmail email account at sethhcrawford@hotmail.com attaching the same documents that he previously sent to his Gmail e-mail account to his Deere e-mail account. Stippich Decl., ¶¶ 10-11. Deere cannot confirm whether these documents have been transferred elsewhere. *Id.*

## ARGUMENT

Under well-established standards, Deere is entitled to injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, and the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*, because Deere has demonstrated: 1) a reasonable likelihood of success on the merits; 2) the lack of an adequate remedy at law; 3) the threatened harm to Deere outweighs the threatened harm of the injunction; and 4) the injunction will not disserve the public interest. *See Lakeview Technologies, Inc. v. Robinson,* 446 F. 3d 655, 658 (7th Cir. 2006); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214 (7th Cir. 1993); *Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, 17 C 8816, 2018 U.S. Dist. LEXIS 15106,*10-15 (N.D. Ill. Jan. 31, 2018).

**I.       Deere Has a Reasonable Likelihood of Success on the Merits of Its Claims.**

At this juncture, Deere merely needs to establish a reasonable likelihood of success on the merits; it does not have to prove its entire case. "[T]he threshold is low" in assessing a reasonable likelihood of success on the merits. *Brunswick Corp. v. Jones,* 784 F.2d 271, 275 (7th Cir. 1986) (quoting *Rowland Mach. Co. v. Dresser Indus.* 749 F.2d 380, 387 (7th Cir. 1984)). Indeed, "[i]t is enough that 'the plaintiff's chances are better than negligible.'" *Rowland,* 749 F.2d at 387 (citation omitted.)

9

**A. Deere Has a Reasonable Likelihood of Success on the Merits of Its Federal Defend Trade Secrets Act ("DTSA") and the Illinois Uniform Trade Secrets Act ("ITSA").**

Under Illinois law, an employer's trade secrets are a protectable interest. *Stenstrom Petroleum Servs. Grp., Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1090, 874 N.E.2d 959 (2007). Both the DTSA and the ITSA provide for injunctive relief for "[a]ctual or threatened misappropriation" of a "trade secret." 18 U.S.C. § 1836(b)(3)(A)(i); 765 ILCS 1065/3.

The DTSA defines "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> **(A)** the owner thereof has taken reasonable measures to keep such information secret; and
> **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). The definition of a "trade secret" under the ITSA is substantially the same. 765 ILCS 1065/2(d). *See also Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 276, 827 N.E.2d 909 (2005) (stating the plaintiffs can demonstrate information is a trade secret by showing (1) "the information was sufficiently secret to give them a competitive advantage" and (2) "they took affirmative measures to prevent others from acquiring or using the information").

Under the DTSA, "misappropriation" is defined, in relevant part, as:

> **(A)** acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> **(B)** disclosure or use of a trade secret of another without express or implied consent by a person who—
> **(i)** used improper means to acquire knowledge of the trade secret;
> **(ii)** at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
> **(I)** derived from or through a person who had used improper means to acquire the trade secret;
> **(II)** acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
> **(III)** derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret…

18 U.S.C. § 1839(5). The definition of "misappropriation" under the ITSA is the same. 765 ILCS 1065/2(b). "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *See* 18 U.S.C. § 1839(6); 765 ILCS 1065/2(a). All elements of a trade secret misappropriation are met here.

The full extent of Deere's trade secrets taken by the Defendants is not yet fully known, as Deere's investigation has been stymied by the Defendants refusal to fully, and credibly, account for the stolen documents and information. The trade secrets stolen by the Defendants from Deere rise to the level of a trade secret in Illinois and under the federal law. This information is not generally known by, nor readily ascertainable to, the general public or its competitors, and Deere has taken reasonable steps to protect it.

As discussed above, the Defendants misappropriated Deere's trade secrets by accessing, copying, and transferring Deere's trade secrets to their personal accounts without authorization, and after Mr. Crawford interviewed and received a job offer with a direct competitor of Deere. Also, the Defendants misappropriated Deere's trade secrets by retaining and refusing to return Deere's trade secrets following termination of their employment with Deere.

The Crawfords both removed substantial volumes of Deere's trade secret and confidential information on the same days as each other, which happened to be just after Seth Crawford's AGCO interview and job offer, using the same technique of uploading documents from their Deere-owned laptops into private email/cloud accounts. Mr. Crawford then transferred the documents at issue between his personal Gmail and Hotmail e-mail accounts, and then wrongfully retained the documents after the end of his employment. *See e.g., also Int'l Airport Ctrs. v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006) (employee's legitimate authorization to the employer's computers ended when the employee resolved to leave the employer and engage in misconduct contrary to his employment agreement).

As such, there is a high likelihood of Deere prevailing on the merits of its DTSA and ITSA claims.

**B. Deere Has a Likelihood of Success on the Merits of Its Breach of Contract Claims.**

To prevail on its contract claims, Deere must show the existence of a contract, performance by Deere, breach by the Defendants, and injury flowing from the breach. *See Henderson-Smith & Assocs., Inc. v. Nahamani Family Serv. Ctr., Inc.*, 323 Ill. App. 3d 15, 27, 752 N.E.2d 33 (2001).

The Defendants signed multiple confidentiality agreements in consideration for their employment at Deere (Mr. Crawford signed one such agreement, while Ms. Crawford signed three). The Agreements provide that the Defendants are not to "use or give to others, either during or after [their] employment, any trade secret or confidential information belonging to the Company." Gilmore Decl., ¶ 14, Exh. A; Goerdt Decl., ¶¶ 11-12, Exh. A-B. The Agreements further require the Defendants to return all "materials that relate to such trade secrets or confidential information" upon termination of their employment with Deere. *Id*.

12

As explained in detail in the Complaint, the Defendants not only failed to safeguard and return trade secrets and confidential information to the Company, they improperly accessed, copied, transferred and retained Deere's trade secrets and confidential information after interviewing and receiving a job offer from a competitor and on the way out of the Company. Accordingly, there is a high likelihood of Deere prevailing on the merits of its breach of contract claims.

**II.     Deere Has No Adequate Remedy at Law.**

"A remedy at law is adequate when shown to be clear, complete and as practical and efficient as the equitable remedy." *Agrimerica, Inc. v. Mathes*, 170 Ill. App. 3d 1025, 1035, 524 N.E.2d 947, 953 (1st Dist. 1988). In Illinois, "[o]nce a protectable interest is established, irreparable injury to the plaintiff is presumed if the interest remains unprotected." *A-Tech Computer Servs., Inc. v. Soo Hoo*, 254 Ill. App. 3d 392, 400, 627 N.E.2d 21 (1993). Illinois law presumes that irreparable harm will be done in the absence of injunctive relief if trade secrets are misappropriated. *See Jano Justice Sys., Inc. v. Burton*, 636 F. Supp. 2d 763, 767 (C.D. Ill. 2009). Deere has a protectable interest in its confidential business information. Unless this Court enjoins the Defendants, that interest will remain unprotected. Thus, irreparable injury must be presumed. *Soo Hoo*, 254 Ill. App. 3d at 400.

Illinois courts have consistently recognized that to show that a remedy at law is inadequate, the plaintiff merely needs to allege that the injured party cannot be adequately compensated in damages or that damages cannot be accurately measured in monetary terms. *Cross Word Prods., Inc. v. Suter*, 97 Ill. App. 3d 282, 286, 422 N.E.2d 953 (1981). As Illinois courts have noted,

"[w]hile pecuniary damages can be calculated, loss of competitive position is intangible, incapable of being measured." *Soo Hoo*, 254 Ill. App. 3d at 401. According to the court in *Soo Hoo*:

> [t]he amount of damage is manifested as a loss of customers, goodwill, and future profits. These are so variable in nature that damages are hard to assess with any degree of accuracy. . . . [Moreover], the fact that the ultimate relief may be a money judgment does not deprive a court of equity of the power to grant a preliminary injunction.

*Id*.

The *Agrimerica* court made similar observations:

> Lost profits are often calculable; however, even if the court could determine the precise level of pecuniary damage to [the employer], it could not compensate the loss of competitive position sustained during the several weeks before [the employer] discovered [the employee] was attempting to lure its customers to [his new employer].

*Agrimerica*, 170 Ill. App. 3d at 1035.

Because Deere has no means of measuring its loss in dollars, it has no adequate remedy at law. *See Soo Hoo*, 254 Ill. App. 3d at 401. Accordingly, Deere must rely on, and deserves, injunctive relief.

### III. The Benefit of Injunctive Relief Outweighs Denial And Serves The Public Interest.

The benefit of injunctive relief to Deere far outweighs any detriment to the Defendants or to the public. Illinois courts recognize that there is a "protectable business interest where a trade secret exists and . . . a breach of confidentiality by an employee has occurred in the course of his employment." *See Burt Dickens & Co. v. Bodi*, 144 Ill. App. 3d 875, 879, 494 N.E.2d 817 (1986). On one hand, an injunction would protect Deere's goodwill, business reputation, trade secrets, and the contractual confidentiality commitments of its employees. The Defendants, by contrast, has no equities on their side. The inability to capitalize on Deere's goodwill or use Deere's

14

confidential information and trade secrets is not a cognizable harm. *See IDS Life Ins. Co. v. SunAmerica Inc.*, 958 F. Supp. 1258, 1281 (N.D. Ill. 1997) (where injunction would prohibit only illegal behavior, injunction would not cause cognizable harm to defendant), *vacated in part on other grounds*, 136 F.3d 537 (7th Cir. 1998). Accordingly, injunctive relief outweighs the denial of injunctive relief and best serves the public interest.

## CONCLUSION

For all the foregoing reasons, and based on the matters set forth in Plaintiff's Complaint and to be established at the preliminary injunction hearing, Deere is entitled to the requested injunctive relief.

Dated: September 18th, 2019

Respectfully submitted,
DEERE & COMPANY,
Plaintiff,

/s/ *Eric H. Rumbaugh*
One of Its Attorneys

Martha L. Shaff, IL State Bar No.: 6216828
BETTY, NEUMAN & MCMAHON PLC
1900 E. 54th Street
Davenport, IA 52807
Phone: (563) 326-4491 ext. 527
Fax: (563) 326-4498

Eric H. Rumbaugh, WI State Bar No.: 1015164
Victor J. Allen, IL State Bar No.: 6304576
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, Wisconsin 53202
Telephone: (414) 271-6560
Facsimile: (414) 277-0656