**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| DEERE & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 4:19-CV-4178-SLD-JEH |
| SETH CRAWFORD, and | ) | |
| ADRIAN CRAWFORD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Seth and Adrian Crawford (collectively, "the Crawfords") submit this

Memorandum in Support of their Motion to Dismiss filed in response to the Complaint filed by

Plaintiff Deere & Company ("Deere").

## INTRODUCTION

Deere has filed this action against its former employees, Defendants Seth and Adrian

Crawford, for alleged trade secret violations and breach of confidentiality under the Defend

Trade Secrets Act ("DTSA"), Illinois Trade Secrets Act ("ITSA"), and Illinois common law on

breach of fiduciary duty.  Deere complains that the Seth and Adrian Crawford, who are married,

each respectively e-mailed Deere materials to their personal e-mail accounts before their

employment with Deere ended.  In Mr. Crawford's case, Deere alleges that he e-mailed material

before he resigned to take a job with Deere's competitor, AGCO Corporation.  In Ms.

Crawford's case, Deere alleges that she e-mailed Deere material before it terminated her on the

same day that her husband resigned.  But absent from Deere's complaint is any allegation that

either of the Crawfords disclosed the material to a third party or used the Deere material at issue in their business.  As explained below and based on its own forensic investigation of the Crawfords' electronic devices, Deere did not, and cannot, reasonably make this allegation. Deere's inability to do so is fatal to its claims under DTSA, ITSA, and Illinois common law on breach of fiduciary duty.  Additionally, Deere's breach of fiduciary duty claims fail because ITSA preempts it.  As a result, the Court should grant Defendants' motion to dismiss.

## <u>MATERIAL FACTUAL ALLEGATIONS</u>

Below is an account of the relevant facts leading up to this action.

### A.   Employment History

#### 1.  Seth Crawford

Deere hired Mr. Crawford in 1997 as a marketing representative in Jonesboro, Arkansas. Deere ultimately promoted him to Director, Global Customer Product Support.  Mr. Crawford held this position from 2014 until he resigned. (Doc. 1 at 4 ¶ 16).   In his position, Mr. Crawford oversaw customer service and product support in the Agriculture and Turf division of Deere.  He also was responsible for warranty claims.  Mr. Crawford's role as director was to manage strategy, budgeting, processes, and costs on product warranties. *Id*.  On June 3, 2019, Mr. Crawford resigned from Deere to accept a job at AGCO as Vice President of Fuse Connected Services and Technology.  (*Id*. at 15 ¶ 57).

#### 2.  Adrian Crawford

Deere hired Ms. Crawford in 2009.  (Doc. 1 at 6 ¶ 25).  Deere ultimately promoted her to the position of manager in the Enterprise Analytics Accelerator division.  *Id*.  In his position, Ms. Crawford managed the strategy and execution of data analytics activities, the development of analytics programs, the leveraging of analytics insights, and the development of Deere's strategy

for digitalization.  (*Id*. at ¶ 16).   On June 3, 2019, Deere terminated Ms. Crawford after her

husband had resigned.  (*Id.* at 16 ¶ 59).

**B.      Deere's Employee Innovation & Proprietary Information Agreement**

**1.  Seth Crawford**

On June 2, 1997, Mr. Crawford signed the Employee Innovation and Proprietary

Information Agreement ("Non-Disclosure Agreement") that Deere presented him.  The Non-

Disclosure Agreement is a form that Deere required certain employees to sign as a condition of

their employment.  (Doc. 1 at 6 ¶ 22).  In relevant part, the four-paragraph, Non-Disclosure

Agreement form states:

> 1.      Except as required by my duties for the Company, I will not use or give to
> others, either during or after my employment, any trade secret or confidential
> information belonging to the Company or others with whom the Company does
> business.  Examples of what may be considered as trade secrets or confidential are
> designs, processes, systems, computer programs, writings, research and
> development information, financial data, and marketing strategies.  I also agree
> that any trade secrets and/or confidential information I have that belongs to my
> previous employers will not be used by me or the benefit of the Company.
>
> …
>
> 3.      Upon termination of my employment I will return to the Company all
> materials that relate to such trade secrets or confidential information.

(*Id.* at 6 ¶ 22).

**2.  Adrian Crawford**

During her employment, Ms. Crawford signed two versions of Deere's Employee

Innovation and Proprietary Information Agreement.  In 2008 and 2009, she signed agreements

that stated the following:

> 1.      Except as required by my duties for the Company, I will not use or give to
> others, either during or after my employment, any trade secret or confidential
> information belonging to the Company or others with whom the Company does
> business.  Examples of what may be considered as trade secrets or confidential are

designs, processes, systems, computer programs, writings, research and development information, financial data, and marketing strategies.  I also agree that any trade secrets and/or confidential information I have that belongs to my previous employers will not be used by me or the benefit of the Company.

3.      Upon termination of my employment I will return to the Company all materials that relate to such trade secrets or confidential information.

(Doc. 1 at 8 ¶ 33).

Ms. Crawford electronically signed the latest version on November 29, 2017 ("2017 Agreement").  The Agreement was much longer and contained more detailed provisions.  Deere identified the following section in its Complaint:

Disclosure and Use Restrictions. You agree and covenant: (i) to treat all Confidential Information as in accord with Deere & Company's Code of Business Conduct guidelines including without limitation adhering to all marking requirements; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be made available to any entity or person outside of the direct employ of Deere except as required in the performance of Your authorized employment duties and only after execution of a confidentiality agreement by the third party with whom Confidential Information will be shared; and (iii) not to access or use any Confidential Information, and not to copy or remove any Confidential Information from the premises or control of Deere, except as required in the performance of Your authorized employment duties and as permitted by Deere's written policies.

(*Id.* at 9 ¶ 36).

## C.      Deere's Investigation

On June 5, 2019, Deere sent an evidence preservation letter to the Crawfords that informed them Deere had opened an investigation into Mr. Crawford's resignation and Ms. Crawford's termination. (Doc. 1 at 16 ¶ 60).  Deere's outside counsel requested that the Crawfords provide access to their personal electronic devices and e-mail accounts for forensic imaging and analysis.  Mr. Crawford provided Deere's vendor the following devices and account access:

- Seth Crawford Surface Pro

- Seth Crawford iPhone
- Seth Crawford Hotmail Account
- Seth Crawford Gmail and Google Drive Accounts
- Seth Crawford Dropbox Account

Ms. Crawford provided the following devices and account access:

- Adrian Crawford iPhone
- Adrian Crawford Gmail Accounts and Google Drive Accounts
- Adrian Crawford Dropbox Account

(*Id.* 1 at 16 ¶ 62; Doc. 4-16, Decl. Matthew J. Stippich, ¶ 7). (Mr. Crawford also voluntarily to submitted to a deposition with Deere's outside counsel in before Deere filed this suit).

Deere alleges that it found evidence that Mr. Crawford and Ms. Crawford e-mailed certain Deere materials to their personal accounts while still employed at Deere. (In his opposition to Deere's request for a TRO, Mr. Crawford explains his business reason for e-mailing them to himself and both he and his wife confirm that they have deleted all materials, except those that Deere has demanded that they preserve for litigation.) However, Deere does not allege that the forensic investigator found any Deere material on Mr. Crawford's SurfacePro, on his Gmail account, or on any of Ms. Crawford's devices or accounts. While it alleges to have found existing evidence on Mr. Crawford's Hotmail account—which he disclosed to Deere in the first place—Deere also does not allege that he found any evidence that either of them had forwarded the e-mails to anyone at AGCO or to third parties. (Doc. 1 at 16 ¶¶ 63-67; Doc. 4-16, ¶¶ 8, 10, 11).

## <u>LAW AND ARGUMENT</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (internal citations and quotations omitted). A claim is plausible on its face if the complaint contains "factual content" that is sufficient to allow "the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. In assessing the sufficiency of the factual content, the court must accept factual allegations as true, but it also must disregard "legal conclusions." *Id*. The standard also requires the court "to draw on its judicial experience and common sense." *Id*.

Deere's Complaint fails to meet this standard because it lacks factual allegations that establish any use or disclosure to a third party of the Deere material that Defendants e-mailed themselves. Both the law and "common sense" dictate that this factual allegation is critical to establishing Deere's claims for DTSA and ITSA violations, breach of contract, and breach of fiduciary duty. Based on its absence, Deere's Complaint fails to meet the standard necessary to withstand a motion to dismiss.

**A.      Deere's allegations fail to state a claim under DTSA and ITSA.**

DTSA mirrors ITSA, so courts have repeatedly used the same substantive framework to analyze claims asserted under them. *Vendavo, Inc. v. Long*, No. 19-cv-1725, 2019 U.S. Dist. LEXIS 148194, at *17 (N.D. Ill. Aug. 30, 2019) ("Given the 'pertinent definitions of the two acts overlap,' [citation omitted], the Court will analyze the DTSA and ITSA claims together."). To prevail on a misappropriation of trade secrets claim under DTSA and ITSA, Deere must show that the information allegedly taken by the defendants was "(i) secret (that is, not generally known in the industry), (ii) misappropriated (that is, stolen from it rather than developed independently or obtained from a third source), and (iii) used in the defendants' business." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 896 (N.D. Ill. 2019); *see also Rotec Indus. v. Mitsubishi Corp.*, 179 F. Supp. 2d 885, 886 (C.D. Ill. 2002) (applying same elements under ITSA) (citing *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1268 (7th Cir. 1992)). Putting aside the first and second elements of Deere's DTSA and

ITSA claims solely for purposes of this motion,[1] Deere has failed to establish the third, "use" element.

Under DTSA and ITSA, the "use" element is required in addition to a showing of "misappropriation." *See Composite Marine Propellers, Inc.*, 962 F.2d at 1268 (7th Cir. 1992) (affirming judgment where there was "a total failure of proof" that defendant used the alleged trade secret); *Rotec*, 179 F. Supp. 2d at 895-96 (granting summary judgment in favor of defendant where the defendants produced unrebutted evidence that they "did not use the Study or the Pro Forma Quotation in preparing the MC/Potain bid proposal"); *Fleetwood Packaging v. Hein*, No. 14 C 9670, 2014 U.S. Dist. LEXIS 172540, at *23 (N.D. Ill. Dec. 15, 2014) (denying TRO based in part on the plaintiff's failure to provide any evidence "that [defendant] disclosed any trade secrets or confidential information to [a third party], or that he used that information himself in order to solicit his former Signode failed customers"); *Woodard v. Harrison*, No. 08-2167, 2008 U.S. Dist. LEXIS 87016, at *7-8 (C.D. Ill. Oct. 24, 2008) (granting motion to dismiss where plaintiff's allegations established the existence of a "trade secret" and "misappropriation" but did not establish the critical "use" element).

Deere's misappropriation claims under DTSA and ITSA are flawed in the same way as the plaintiffs' claims were in the cases above. Deere fails to allege in its Complaint—and even fails to prove in its motion for a TRO—that the Crawfords have used or are likely to use the Deere material at issue in his position at AGCO. (*See* Doc. 1 at 18-19 ¶¶ 64-67). Significantly, Deere also doesn't even allege that the Crawfords intend to use any Deere material, but even that allegation would not suffice. *See Teradyne, Inc. v. Clear Commc'ns Corp.,* 707 F. Supp. 353,

---

[1] By not challenging whether Deere has sufficiently alleged these two elements of its DTSA and ITSA claims, Defendants are not conceding that Deere has met those elements and reserves its right to raise all defenses to any of Deere's claims against them.

357 (N.D. Ill. 1989) ("All that is alleged, at bottom, is that defendants could misuse plaintiff's secrets, and plaintiffs fear they will."); *Complete Bus. Solutions, Inc. v. Mauro,* No. 01-C-0363, 2001 U.S. Dist. LEXIS 3132, 2001 WL 290196, *5 (N.D. Ill. Mar. 16, 2001) (unreported) (stating that allegations that the plaintiff "could misuse the information" or that the plaintiff "fears that he will" misuse the information are insufficient to allege misuse).

In fact, Deere does not allege that its own forensic investigation of Deere's electronic devices found anything to indicate that the Crawfords provided any of the Deere material to a third party or used the material themselves in their current positions.  (Doc. 1 at 16 ¶¶ 63-67; Doc. 4-16, ¶¶ 8, 10, 11).  As a result, the Court should grant the motion and dismiss the DTSA and ITSA claims in the Complaint.

**B.    Deere has not alleged facts supporting a breach of the Crawfords' Non-Disclosure Agreements.**

### 1.  Seth Crawford

Mr. Crawford's Non-Disclosure Agreement prohibits him from "us[ing] or giv[ing] to others, either during or after my employment, any trade secret or confidential information belonging to the Company or others with whom the Company does business."  (Doc. 1 at 5-6 ¶ 21).  As stated above, Deere has not alleged that he used any of the alleged "trade secrets."  It also does not allege that he gave them to AGCO or anyone else.  In fact, it cannot reasonably allege these facts because it must concede that its investigation did not find any evidence that Mr. Crawford used the alleged "trade secrets" or disclosed them to a third party.  (Doc. 1 at 16 ¶¶ 63-67; Doc. 4-16, ¶¶ 8, 10, 11).  Similarly, Deere cannot genuinely argue that Mr. Crawford refused to "return to the Company all materials that relate to such trade secrets or confidential information."  (Doc. 1 at 5-6 ¶ 21).  It does not identify what, if any, material that he has refused to return.  In fact, there are none.

Unable to show a violation of the Non-Disclosure Agreement, Deere instead relies on the argument that Mr. Crawford failed to "safeguard" the Deere material. (Doc. 5 at 13). Even if this assertion were true—which it is not—it would not violate the Non-Disclosure Agreement, which does not prohibit Mr. Crawford from e-mailing documents to himself, whether in his work or personal accounts.

Hemmed in by this fact, Deere argues that Mr. Crawford gave up his right to access Deere's information under the Non-Disclosure Agreement when he interviewed with AGCO. (Doc. 5 at 12 citing *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 421 (7th Cir. 2006)). But the Non-Disclosure Agreement does not provide for any such time limitation. Instead, it ends Mr. Crawford's right to Deere material "upon termination." (Doc. 1 at 5-6 ¶ 21). In any event, the case on which Deere relies does not support its argument. Instead, the *Citrin* court held that "[u]nless otherwise agreed, the authority of the agent terminates if, without knowledge of the principal, he acquires adverse interests or if he is otherwise guilty of a serious breach of loyalty to the principal." *Citrin*, 440 F.3d at 421. When Mr. Crawford e-mailed the Deere documents to his personal account, he remained employed at Deere. It wasn't until June 3, 2019 that he gave his notice of resignation. (Doc. 1 at 15 ¶ 57). Based on its allegations, Deere has not established that Mr. Crawford breached his Non-Disclosure Agreement. As a result, the Court should dismiss Deere's breach of contract claim against Mr. Crawford.

### 2. Adrian Crawford

Ms. Crawford's 2008 and 2009 Non-Disclosure Agreements prohibit Ms. Crawford from "us[ing] or giv[ing] to others, either during or after my employment, any trade secret or confidential information belonging to the Company or others with whom the Company does business." (Doc. Nos. 1-5, 1-6). As stated above, Deere has not alleged that Ms. Crawford used

any of the alleged "trade secrets."  It also does not allege that she gave them to AGCO or anyone

else.  In fact, it cannot reasonably allege these facts because it must concede that its investigation

did not find any evidence that Ms. Crawford used the alleged "trade secrets" or disclosed them to

a third party.  (Doc. 1 at 16 ¶¶ 63-67; Doc. 4-16, ¶¶ 8, 10, 11).  Similarly, Deere cannot

genuinely argue that Ms. Crawford refused to "return to the Company all materials that relate to

such trade secrets or confidential information."  (Doc. 4-1).

Deere also cites Section 6(b) of Ms. Crawford's 2017 Agreement, but it does not explain

how Ms. Crawford breached it other than to contend that she failed to "safeguard" the

information.  (Doc. 5 at 13).  The 2017 Agreement does not spell out how it required Ms.

Crawford to "safeguard" Deere information.  And it does not forbid her from e-mailing

documents to herself.  As a result, the Court should dismiss the breach of contract claim against

Ms. Crawford.

## C.    Deere fails to state a claim for breach of fiduciary duty.

ITSA "abolishes claims other than those based on contract arising from misappropriated

trade secrets," including any state law claims that "rest on *the conduct* that is said to

misappropriate trade secrets."  *RTC Industries, Inc. v. Haddon*, No. 06 C 5734, 2007 WL

2743583, at *2 (N.D. Ill. Sept. 10, 2007) (*citing Hecny Transportation, Inc. v. Chu*, 430 F.3d

402, 404 (7th Cir. 2005)).  Deere has not alleged any act other than Defendants' e-mails to

themselves that it contends to be a breach of their fiduciary duties, so Deere's state-law breach of

fiduciary duty and loyalty claims are grounded exclusively on the alleged acts of

misappropriation.  As a result, they fail as a matter of law under ITSA's preemption provision.

## <u>CONCLUSION</u>

For the reasons stated above, this Court should grant Defendants' motion and dismiss

Deere's claims against them with prejudice.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Benton J. Mathis, Jr.*
Benton J. Mathis, Jr.
Georgia Bar No. 477019
*Admitted in the Central District of Illinois*
bmathis@fmglaw.com
Justin J. Boron
New Jersey Bar No. 250422019
*Admitted in the Central District of Illinois*
jboron@fmglaw.com
Hillary L. Freesmeier
Georgia Bar No. 202626
*Admitted in the Central District of Illinois*
hfreesmeier@fmglaw.com

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339
T:  (770) 818-0000
F:  (770) 937-9960

Rodger A. Heaton
Illinois Bar No. 6190908
MCGUIREWOODS, LLP
77 West Wacker Drive
41st Floor
Chicago, IL  60601

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| DEERE & COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 4:19-CV-4178-SLD-JEH |
| SETH CRAWFORD, and | ) | |
| ADRIAN CRAWFORD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a true and correct copy of the foregoing ***Defendants'***

***Motion to Dismiss*** and ***Memorandum in Support of Defendants' Motion to Dismiss*** were all filed

with the Clerk of Court using the CM/ECF system which will automatically send electronic mail

notification of such filing to counsel of record who are CM/ECF participants.

This 10th  day of October, 2019.

> */s/ Benton J. Mathis, Jr.*
> Benton J. Mathis, Jr.
> Georgia Bar No. 477019
> *\*Admitted in the Central District of Illinois*